1  WILSON TURNER KOSMO LLP
   MARISSA L. LYFTOGT (259559)
2  SUSAN I. HENDERSON (335618)
   402 West Broadway, Suite 1600
3  San Diego, California 92101
   Telephone: (619) 236-9600
4  Facsimile: (619) 236-9669
   Email: mlyftogt@wilsonturnerkosmo.com
5  E-mail: shenderson@wilsonturnerkosmo.com

6  Attorneys for Defendant
   PENTAIR WATER POOL AND SPA, INC.

7

8              UNITED STATES DISTRICT COURT

9       CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

10

11 OSCAR FELIX,                          ) Case No. 2:22-cv-4847
   individually, and on behalf of all others )
12 similarly situated,                   )
                                         ) **DEFENDANT'S NOTICE OF**
13              Plaintiff,               ) **REMOVAL OF CIVIL ACTION**
                                         ) **UNDER 28 U.S.C. §§ 1332(d), 1446,**
14        vs.                            ) **1453**
                                         )
15 PENTAIR WATER POOL AND SPA,           ) [Removed from Ventura County Superior
   INC., and DOES 1 through 10, inclusive, ) Court; Case No. 56-2022-00565583-CU-
16                                       ) OE-VTA]
              Defendants.                )
17                                       ) Complaint Filed: May 10, 2022
                                         )
18                                       ) [Filed concurrently with Declaration of
                                         ) Joy Salters, Declaration of Minerva
19                                       ) Chacon, Declaration of Lance Bonner,
                                         ) Civil Case Cover Sheet, Notice of
20                                       ) Interested Parties, and Corporate
                                         ) Disclosure Statement]
21 _____

22

23

24

25

26

27

28
                                              CASE NO. 2:22-cv-4847

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF OSCAR FELIX AND HIS COUNSEL OF RECORD:**

Pursuant to the Class Action Fairness Act of 2005 ("CAFA"),28 U.S.C. sections 1332(d), 1441, 1446, and 1453, Defendant Pentair Water Pool and Spa, Inc. ("Defendant") hereby removes the above-entitled action from the Superior Court of California for the County of Ventura, to the United States District Court for the Central District of California, Western Division. This Court has original subject matter jurisdiction under CAFA because this is a class action in which at least one class member is a citizen of a state different from that of Defendant, the number of members of the proposed plaintiff class in the aggregate is more than 100 and, assuming only for the purposes of this removal that Plaintiff's allegations are true, the amount in controversy exceeds $5 million, exclusive of costs and interest. Defendant denies Plaintiff's factual allegations, and denies that Plaintiff, or any member of the class he purports to represent, is entitled to the relief requested or that class treatment is appropriate. However, based on Plaintiff's allegations in the Complaint and prayer for relief, all requirements for jurisdiction under CAFA have been met. Accordingly, removal is proper pursuant to28 U.S.C. sections 1446 and 1453.

In support of this Notice of Removal, Defendant states as follows:

**I.    PLAINTIFF'S COMPLAINT AND TIMELINESS OF REMOVAL.**

1. Plaintiff filed a class action Complaint against Defendant on May 10, 2022 in Ventura County Superior Court, State of California, Case No. 56-2022-00565583-CU-OE-VTA, captioned *Oscar Felix, individually, and on behalf of all others similarly situated v. Pentair Water Pool and Spa, Inc., a California corporation and DOES 1 through 10, inclusive* ("Complaint" or "Compl.").

2. Plaintiff's Complaint alleges that Defendant violated various state wage and hour laws. Specifically, Plaintiffs claim that Defendant: (1) failed to pay minimum wages in violation of Labor Code §§ 204, 1194 and applicable IWC Wage

1

CASE NO. 2:22-cv-4847

NOTICE OF REMOVAL

Orders; (2) failed to pay overtime wages in violation of Labor Code §§ 204, 510, 1198 and applicable IWC Wage Orders; (3) failed to provide meal periods in violation of Labor Code §§ 226.7, 512 and applicable IWC Wage Orders; (4) failed to authorize and permit rest breaks in violation of Labor Code §§ 226.7, 512 and applicable IWC Wage Orders; (5) failed to indemnify necessary business expenses in violation of Labor Code § 2802 and applicable IWC Wage Orders; (6) failed to timely pay final wages due and owing at termination in violation of Labor Code §§ 201-203; (7) failed to provide accurate itemized wage statements in violation of Labor Code § 226(a) and applicable IWC Wage Orders, and (8) violated Business & Professions Code section 17200 *et seq.* by failing to comply with the Labor Code. Compl. at ¶¶ 30-94.

3.   Plaintiff seeks to represent a class of individuals described as follows: "All persons who worked for any Defendant in California as an hourly, non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice to the Class is sent." *Id.* at ¶ 23.

4.   Plaintiff served Defendant June 14, 2022 by personal service on its registered agent for service of process. This notice of removal is therefore timely pursuant to 28 U.S.C. section 1446(b), because it is filed within 30 days after service of the Complaint was completed on Defendant. No previous Notice of Removal has been filed or made with this Court for the relief sought herein.

5.   Pursuant to 28 U.S.C. section 1446(a), true and correct copies of the Summons, Complaint, Civil Case Cover Sheet, and Alternative Dispute Resolution (ADR) Information served on Defendant are attached as **Exhibit 1** filed concurrently herewith. Defendant filed its Answer in the Superior Court action on July 13, 2022. A true and correct copy of Defendant's Answer is attached as **Exhibit 2** filed concurrently herewith.

6.   Exhibits 1 and 2 include all the pleadings, process, and orders served upon or by Defendant in the Superior Court action.

4882-3559-0184 V2

## II.    BASIS FOR REMOVAL.

7.    This action is a civil action over which this Court has original jurisdiction under 28 U.S.C. section 1332, and is one which may be removed to the United States District Court by Defendant pursuant to the provisions of 28 U.S.C. sections 1332(d), 1441 and 1453 in that it is a purported class action in which there are more than 100 putative class members, it is between citizens of different states, and the amount in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.

8.    CAFA was enacted to expand federal jurisdiction over purported class actions. It provides that a purported class action may be removed in accordance with28 U.S.C. section 1446 if: (a) membership in the putative class is not less than 100; (b) any member of the plaintiff class is a citizen of a foreign country or a state different from any defendant; and (c) the aggregate amount in controversy exceeds $5,000,000.00.28 U.S.C. §§ 1332(d), 1453(b).

### A.    <u>Plaintiff and Defendant are Minimally Diverse.</u>

9.    CAFA's requirement that any one member of the proposed class be a citizen of a state different from any defendant (28 U.S.C. § 1332(d)(2)) is satisfied here.

10.    "An individual is a citizen of the state in which he is domiciled . . . ." *Boon v. Allstate Ins. Co.,* 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (*citing Kanter v. Warner-Lambert Co.,* 265 F.3d 853, 857 (9th Cir. 2001)). Citizenship is determined by the individual's domicile at the time that the operative complaint is filed. *Armstrong v. Church of Scientology Int'l,* 243 F.3d 546 (9th Cir. 2000) (citing *Lew v. Moss,* 797 F.2d 747, 750 (9th Cir. 1986)); *Broadway Grill, Inc. v. Visa, Inc.,* 856 F.3d 1274, 1279 (9th Cir. 2017).

11.    Plaintiff avers in his Complaint that he is a California resident who worked for Defendant in Ventura County, California from approximately 1998 until January 2022. Compl. at ¶¶ 7, 13. This assertion is *prima facie* evidence that he is

domiciled in California for purposes of diversity. *See Barrera v. W. United Ins. Co.,* 567 F. App'x 491, 492 n.1 (9th Cir. 2014) ("The place where a person lives is taken to be his domicile until facts adduced establish the contrary.") (internal quotations omitted); *see also Mondragon v. Capital One Auto Fin.,* 736 F.3d 880, 885 (9th Cir. 2013) (observing "that the party with the burden of proving citizenship may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change");*CarMax Auto Superstores CA LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1091, fn. 38 (C.D. Cal. 2015) ("Allegations that a party has an extensive and continuous period of residence and employment in a state are sufficient to establish that the party is a citizen of the state"); *Zavala v. Deutsche Bank Trust Co. Americas,* 2013 WL 3474760, at *3 (N.D. Cal. July 10, 2013) (where a plaintiff's complaint alleges he resides in California, in the absence of evidence to the contrary, [plaintiff] is a California citizen for diversity purposes"). Plaintiff, therefore, is a citizen of California for purposes of diversity jurisdiction.[1]

12.    For purposes of CAFA diversity jurisdiction, a corporation is deemed a citizen of the state "by which it has been incorporated" and of the state "where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

13.    At the time this action was commenced on May 10, 2022 and at all times since, Defendant was and is a corporation organized under the laws of the State of Delaware. Declaration of Lance Bonner in Support of Defendants' Notice of Removal ("Bonner Decl."), ¶ 3.

14.    The "principal place of business" for the purpose of determining diversity subject matter jurisdiction refers to "the place where a corporation's officers direct,

---

[1]  In addition, the class of persons whom Plaintiff seeks to represent include current non-exempt employees of Defendant in the State of California (Compl. at ¶ 23), virtually all of whom live and work in California. Thus, even if Plaintiff was not a California citizen, at least one member of the class *is* a California citizen.

control, and coordinate the corporation's activities . . . [I]n practice it should normally be the place where the corporation maintains its headquarters — provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings . . ." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

15.    Under this "nerve center" test, Minnesota emerges as Defendant's principal place of business because the majority of its executive and administrative functions are performed from its corporate office located at 5500 Wayzata Boulevard, Suite 900, Golden Valley, Minnesota, 55416. Bonner Decl., ¶ 4. The majority of Defendant's leadership team is based at its corporate office in Minnesota, where it directs, controls and coordinates the corporation's activities. *Id.* at ¶ 4. Defendant's leadership team members who work from the Minnesota corporate office include the highest-ranking officer responsible for Defendant's business and those employees responsible for Defendant's payroll, human resources, finance, marketing, engineering, commercial business, legal, and some information technology functions. *Id.* Defendant also maintains a corporate office in North Carolina, where some of its executive and administrative functions are directed, controlled and coordinated, including some operations, finance, and information technology functions. *Id.* at ¶ 5. Defendant has never had its headquarters or principal place of business in the State of California. *Id.* at ¶ 6.

16.    Therefore, for diversity of citizenship purposes, Defendant is a citizen of Delaware and Minnesota. 28 U.S.C. § 1332(d)(10).

17.    Because Plaintiff is a citizen of California, and Defendant is not a citizen of California, diversity exists between the parties under CAFA. 28 U.S.C. § 1332(d)(2)(A) (requiring only "minimal diversity" under which "any member of a class of plaintiffs is a citizen of a State different from any defendant.").

///

4882-3559-0184 V2

18.    Plaintiff also named as defendants Does 1 through 10. For purposes of removal jurisdiction, the "citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(b).

### B.    There Are More Than 100 Putative Class Members.

19.    Plaintiff purports to bring and maintain this action as a class action.[2] Compl. at ¶ 21. CAFA's requirement that proposed class membership be no less than 100 is satisfied here because the putative class has more than 100 members. 28 U.S.C. § 1332(d)(5).

20.    Plaintiff seeks to represent a proposed class of all persons who worked for any Defendant in California as an hourly, non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice to the Class is sent. Compl. at ¶ 23. Accordingly, given that Plaintiff's Complaint was filed on May 10, 2022, he seeks a class period from May 10, 2018 through such time as notice is sent to the putative Class.

21.    However, the class action settlement in *Magbis Lopez Munoz v. Pentair Water Pool and Spa, Inc., et al.*, United States District Court for the Central District of California Case No. 2:19-cv-02310 JAK (SKx), bars Plaintiff from pursuing his claims arising prior to October 2, 2019. The *Munoz* action involved class and representative Private Attorney General Act ("PAGA") claims for failure to pay proper wages for all hours worked (including overtime wages), failure to provide compliant meal periods, failure to provide compliant rest breaks, failure to pay vested vacation at the final rate of pay upon separation of employment, failure to timely pay final wages, failure to provide accurate itemized wage statements, unfair and unlawful competition, and PAGA claims. *See* Case No. 2:19-cv-02310 JAK (SKx), *Munoz* First Am. Compl. (ECF 26). The *Munoz* Settlement Class included all individuals who performed work in any non-exempt position for Defendant in California at any time

---

[2]    Defendant denies, and reserves the right to contest at the appropriate time, that this action can properly proceed as a class action.

from May 28, 2016 through October 1, 2019. *Id.* at Joint Stipulation of Class Action Settlement and Release (ECF 33-2, pp. 21-52). Pursuant to this settlement, all Settlement Class Members, including Plaintiff, released claims from May 28, 2016 through October 1, 2019 alleged in the *Munoz* First Amended Complaint or which could have been alleged in the *Munoz* First Amended Complaint based on the allegations, facts, matters, transactions or occurrences alleged therein. *Id.* at ¶¶ 26-28, 51-54. This release expressly included the same claims Plaintiff brings in this action for failure to pay minimum wages, failure to pay overtime wages, failure to provide meal periods, failure to authorize and permit rest breaks, failure to timely pay final wages due and owing at termination, failure to provide accurate itemized wage statements, and violation of Business & Professions Code section 17200 *et seq.* premised on these claims. *Id.* at ¶ 26. Accordingly, Defendant has conservatively narrowed the scope of Plaintiff's proposed putative Class for purposes of removal to include only those persons who worked for Defendant in California as a non-exempt employee at any time since October 2, 2019.

22.    Between October 2, 2019 and the present, Defendant has employed at least 1,300 non-exempt employees in the State of California. Declaration of Joy Salters in Support of Defendants' Notice of Removal ("Salters Decl."), ¶ 4.

///
///
///
///
///
///
///
///
///

**C.** **The Amount Placed in Controversy by Plaintiff's Class Claims Exceeds $ 5 Million.[3]**

23. Pursuant to CAFA, the amount in controversy component of diversity jurisdiction is satisfied when the aggregated claims of the individual members in a class action exceed the sum or value of $5 million. 28 U.S.C. § 1332(d)(6). Where, as here, the Plaintiff does not plead a specific amount of damages, the petition for removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," consistent with the pleading standard under Rule 8(a). *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014) (explaining that a removing defendant need only present a short and plain statement of the grounds for federal jurisdiction in its removal papers and need not present evidence to establish the amount in controversy until challenged to do so). "If a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000' the court should err in favor of exercising jurisdiction over the case." Senate Judiciary Report, S. REP. 109-14, at 42 (2005) (citation omitted).

---

[3] This Notice of Removal addresses the nature and amount of damages that Plaintiff's Complaint places in controversy. Defendant refers to specific damage estimates and cites to comparable cases solely to establish that the amount in controversy exceeds the jurisdictional minimum. Defendant maintains that each of Plaintiff's claims lacks merit and that it is not liable to Plaintiff or any putative Class member in any amount whatsoever. Defendant further denies that any alleged liability or damages can be established on a class-wide basis. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff will or could actually recover any damages based upon the allegations contained in the Complaint or otherwise. The Ninth Circuit has explicitly held that a defendant need not concede liability on any of a plaintiff's claims in order to establish the amount in controversy, but need only show how much is "in play." *Lewis v. Verizon Communications, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability.").

24.   A removing defendant is not obligated to "research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.,* 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008) (internal quotations omitted); *see also LaCross v. Knight Transportation Inc.,* 775 F.3d 1200, 1203 (9th Cir. 2015) (rejecting plaintiff's argument for remand based on the contention that the class may not be able to prove all amounts claimed: "Plaintiffs are conflating the amount in controversy with the amount of damages ultimately recoverable."). The ultimate inquiry is what amount a complaint places "in controversy," not what a defendant may actually owe in damages. *LaCross,* 775 F.3d at 1202 (citation omitted) (explaining that courts are directed "to first look to the complaint in determining the amount in controversy").

25.   Under *Dart Cherokee*, a removing defendant is not required to submit evidence supporting its removal allegations. *Salter v. Quality Carriers, Inc.,* 974 F.3d 959, 964 (9th Cir. 2020) ("a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of jurisdictional elements.") (internal quotations omitted). The removal allegations "may rely on 'a chain of reasoning that includes assumptions' and 'an assumption may be reasonable if it is founded on the allegations of the complaint.'" *Marano v. Liberty Mut. Grp., Inc.,* 2021 WL 129930, at *2 (C.D. Jan. 14, 2021) (quoting *Arias v. Residence Inn by Marriott,* 2019 WL 4148784, at *4 (9th Cir. Sept. 3, 2019)). As the Ninth Circuit recently instructed, a "defendant's amount in controversy assumptions in support of removal will always be just that: assumptions" and "the parties need not predict the trier of fact's eventual award with one hundred percent accuracy." *Jauregui v. Roadrunner Transp. Servs., Inc.,* 28 F.4th 989, 993 (9th Cir. 2022) (emphasis in original).

26.   Where, as here, "a plaintiff makes generalized allegations regarding the frequency of violations, a defendant may calculate the amount in controversy based on [such] reasonable assumptions." *Oda v. Gucci Am., Inc.,* 2015 WL 93335, *5 (C.D.

4882-3559-0184 V2

Cal. Jan. 7, 2015) (defendant "is not required to comb through its records to identify and calculate the exact frequency of violations."). Indeed, where the plaintiff "could have, but did not, make more specific allegations to narrow the scale or scope of th[e] controversy," courts "have assumed 100% violation rates" based on the complaint's "sweeping allegations." *Marano,* 2021 WL 129930, at *3.

27.    Courts within the Central District of California have concluded that it is reasonable to assume a 100% violation rate when the Complaint alleges a policy of noncompliance. *See, e.g., Coleman v. Estes Express Lines, Inc.*, 730 F.Supp.2d 1141, 1149–50 (C.D. Cal. 2010), *affirmed* 631 F.3d 1010 (9th Cir. 2011) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation."); *see also Soratorio v. Tesoro Ref. and Mktg. Co.,* LLC, 2017 WL 1520416, at *3 (C.D. Cal. Apr. 26, 2017) ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate. The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendants' 'common practice.' It also alleges that Defendants had a practice of 'requiring employees to work for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks."); *Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015) ("Plaintiff's FAC does not contain any allegations that suggest a 100% violation rate is an impermissible assumption.").

28.    As shown below, Defendant has exceeded the *Dart Cherokee* standard, providing the Court with reasonable assumptions and estimates based on evidence and/or the allegations and relief sought in Plaintiff's Complaint to show that the amount in controversy at issue here exceeds $5 million. Accordingly, although Defendant disputes liability and damages, for purposes of the jurisdictional requirements for removal only, Defendant has a good faith basis to believe that the

allegations and relief sought in Plaintiff's Complaint put in controversy, in the aggregate, an amount that exceeds $5 million for the purported class claims. *See* 28 U.S.C. § 1332(d)(6) (claims of individual class members set forth in the Complaint are "aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000").

29.    As set forth below, the amount in controversy implicated by the class-wide allegations exceeds $5 million. All calculations supporting the amount in controversy are based on the Complaint's allegations, assuming, without any admission, the truth of the facts alleged and assuming liability is established.

**1.    *Plaintiff's First Cause of Action for Minimum Wages and Liquidated Damages Puts at Least $377,274.78, in Controversy Using a Conservative Violation Rate Assumption.***

30.    In his First Cause of Action, Plaintiff claims that Defendant throughout the statutory period maintained a systemic, company-wide policy and practice of failing to pay employees minimum wages for all hours worked. Compl. at ¶¶ 4(a), 15, 30-39. In support of this claim, Plaintiff specifically alleges that he and the putative Class members "were required to undergo a security check with their vehicles *at the beginning of each workday*, which also included a temperature check and waiting in line, *all off the clock and uncompensated*." *Id.* at ¶ 15 (emphasis added). Plaintiff claims that he and the putative Class members are therefore entitled to recover minimum wages for all non-overtime hours worked. *Id.* at ¶ 33.

31.    In 2019, the minimum wage was $12.00 per hour. *See* History of California Minimum Wage, State of California Department of Industrial Relations, *available at* https://www.dir.ca.gov/iwc/MinimumWageHistory.htm. The minimum wage has increased one dollar per year since then to $13.00 per hour in 2020, $14.00 per hour in 2021, and $15.00 per hour in 2022. *Id.*

32.    Defendant denies that any minimum wages are owed to Plaintiff or any putative Class member. However, for purposes of this jurisdictional analysis *only*,

4882-3559-0184 V2

Defendant relies on Plaintiff's allegations that the minimum wages are owed. Based on these allegations, it is reasonable to assume for purposes of establishing the requisite amount in controversy that at least two minutes of unpaid minimum wages is allegedly owed for each putative Class member per workday. Thus, taking Plaintiff's allegations as true for purposes of this removal, the amount in controversy for this claim can reasonably be estimated at **$377,274.78** which includes recovery of allegedly unpaid minimum wages pursuant to Labor Code § 1194 and liquidated damages pursuant to Labor Code § 1194.2, calculated as follows:

a.   Since October 2, 2019, the putative Class members have worked at least 87,046 weekly pay periods, and have typically worked at least five (5) shifts per week. Salters Decl., ¶ 6; Declaration of Minerva Chacon in Support of Defendants' Notice of Removal ("Chacon Decl."), ¶ 4. Defendant conservatively uses the minimum wage rate of $13.00 applicable in 2020 at a very conservative rate of two minutes owed for five (5) shifts in each of the 87,046 weekly pay periods worked by the putative Class members since October 2, 2019. Accordingly, Plaintiff's allegations put into controversy at least $188,637.39 for allegedly unpaid minimum wages ($13.00/hr x 10 minutes off-the-clock work weekly (.1667 weekly hours) x 87,046 weekly pay periods = $188,637.39).

b.   Because Plaintiff seeks liquidated damages (Compl. at ¶ 37), this amount is doubled yielding a total damages amount in controversy for alleged minimum wage violations of $377,274.78.

**2.   *Plaintiff's Second Cause of Action for Failure to Pay Overtime Compensation Puts at Least $435,317.05, in Controversy Using a Conservative Violation Rate Assumption.***

33.   In his Second Cause of Action, Plaintiff claims that Defendant throughout the statutory period maintained a systemic, company-wide policy and practice of failing to pay employees overtime wages for all hours worked. Compl. at ¶¶ 4(a), 40-48. Plaintiff alleges that "[a]t all times relevant hereto, [he] and the Class

4882-3559-0184 V2

have worked more than eight hours in a workday" and that they are "regularly required to work overtime hours." *Id.* at ¶¶ 43, 44. And again, Plaintiff specifically alleges that he and putative Class members "were required to undergo a security check with their vehicles *at the beginning of each workday*, which also included a temperature check and waiting in line, *all off the clock and uncompensated*." *Id.* at ¶ 15 (emphasis added). Plaintiff further claims that Defendant failed to incorporate all remuneration when calculating the correct overtime rate of pay, leading to underpayment of wages. *Id.*

34.    Defendant denies that any overtime wages are owed to Plaintiff or any putative Class member. However, for purposes of this jurisdictional analysis *only*, Defendant relies on Plaintiff's allegations that the overtime wages are owed. Based on these allegations, it is reasonable to assume for purposes of establishing the requisite amount in controversy that at least two minutes of unpaid overtime wages is allegedly owed for each putative Class member per workday. Thus, taking Plaintiff's allegations as true for purposes of this removal, the amount in controversy for this claim can reasonably be estimated at **$435,317.05**, calculated as follows:

a.    Since October 2, 2019, the putative Class members have worked at least 87,046 weekly pay periods at an average hourly rate of pay of at least $20.00, and have typically worked at least five (5) shifts per week, usually in excess of eight (8) hours per shift. Salters Decl., ¶ 6; Chacon Decl., ¶ 4. Using a very conservative rate of two minutes owed for five (5) shifts in each of these 87,046 weekly pay periods, Plaintiff's allegations put into controversy at least $188,637.39 for allegedly unpaid overtime wages ($30.00/hr. x 10 minutes off-the-clock work weekly (.1667 weekly hours) x 87,046 weekly pay periods = $435,317.05).

///

///

///

4882-3559-0184 V2

### 3. Plaintiff's Third and Fourth Causes of Action for Failure to Provide All Meal and Rest Periods Places at Least $3,481,840.00 in Controversy.

35. In his Third and Fourth Causes of Action, Plaintiff claims that Defendant throughout the statutory period maintained a systemic, company-wide policy and practice of failing to provide employees with timely and duty-free meal periods, failing to authorize and permit employees to take timely and duty free rest periods, failing to pay an additional hour's pay for each workday a meal period violation occurred and failing to pay an additional hour's pay for each workday a rest period violation occurred. Compl. at ¶¶ 4(b), 4(c), 16, 17. Among other things, Plaintiff further alleges that Defendant "regularly failed to provide Plaintiff and the Class with both meal periods as required by California law," "made it impossible or impracticable" for him and the putative Class members to take uninterrupted meal and rest periods, required them to don and doff which reduced their meal periods, and required them to stay on the premises during rest breaks. *Id.* at ¶¶ 16, 17, 51, 55. As a result of these alleged violations, Plaintiff claims he and the putative Class members are entitled to be paid one hour of additional wages for each workday he or she was not provided with all required meal breaks, and one hour of additional wages for each workday he or she was not provided with all required rest breaks. *Id.* at ¶¶ 52, 56

36. Defendant denies that any meal or rest period premiums are owed to Plaintiff or any putative Class member. However, for purposes of this jurisdictional analysis *only*, Defendant relies on Plaintiff's allegations that these premiums are owed. Based these allegations, it is reasonable to assume for purposes of establishing the requisite amount in controversy that Defendant failed to provide Plaintiff and the putative Class with at least one meal break per week. In fact, this is a conservative assumed violation rate given Plaintiff's allegations that Defendant "*regularly* failed to provide Plaintiff and the Class with *both* meal periods as required by California law," that Defendant "[fail]ed to permit and authorize Plaintiff and the putative Class

4882-3559-0184 V2

1   members to take *all* meal periods," and that "Defendant *maintained a systematic,*
2   *company-wide policy and practice* . . . [of] [f]ailing to provide employees with timely
3   and duty free meal periods in compliance with the California Labor Code and IWC
4   Wage Orders." *Id.* at ¶¶ 4(b), 51 (emphasis added).

5       37.    The Central District has regularly found these assumptions for meal and
6   rest break violations for purposes of removal valid. *See, e.g., McCollum v. TGI*
7   *Friday's, Inc.,* Case No. SACV-22-00392-FWS-JDE, 2022 WL 2663870, at *6 (C.D.
8   Cal. July 11, 2022) (finding the defendant's assumptions of one meal period violation
9   per week and one rest period violation per week to be reasonable where the plaintiff
10  alleged a "systematic pattern" of meal and rest period violations); *Mortley v.*
11  *ExpressPipe & Supply Co.,* No. 817CV01938, 2018 WL 708115, at *4 (C.D. Cal. Feb.
12  5, 2018) (finding defendants' assumption that class members missed two meal periods
13  and two rest periods each per week based on allegations of "a company-wide policy
14  and/or practice of understaffing" was reasonable); *Stanley v. Distribution Alts., Inc.,*
15  No. EDCV172173AG (KKX), 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017)
16  (accepting assumed violation rates of "three missed rest breaks, and three missed meal
17  breaks per week" where the complaint offered no guidance as to the frequency of the
18  alleged violations); *Alvarez v. Office Depot, Inc.,* No. CV177220PSGAFMX, 2017
19  WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (finding 60% violation rate reasonable
20  where the complaint "alleges a uniform practice of meal and rest period violations.");
21  *Hamilton v. Wal-Mart Stores, Inc.,* 2017 WL 4355903, at *4 (C.D. Cal. Sept. 29,
22  2017) ("[B]ecause Plaintiff claims that the violations occurred regularly, as a pattern
23  and practice, the Court finds Defendant's estimation of one violation per work week
24  reasonable and conservative.") (citations omitted).

25      38.    Since October 2, 2019, the putative Class members have worked at least
26  87,046 weekly pay periods at an average hourly rate of pay of at least $20.00. Salters
27  Decl., ¶ 6. Using a conservative rate of one meal period violation in each of these

28

87,046 weekly pay periods, Plaintiff's allegations put into controversy at least **$1,740,920.00** in alleged meal period premiums at issue for his Third Cause of Action ($20.00/hour x 1 hour of premium pay x 1 day x 87,046 weekly pay periods = $1,740,920.00).

39.     Furthermore, Plaintiff's allegations also make it reasonable to assume for purposes of establishing the requisite amount in controversy that Defendant failed to authorize and permit at least one rest break per week. Using this conservative assumed violation rate and the same formula as the meal break premium calculations, Plaintiff's allegations put into controversy at least **$1,740,920.00** in alleged rest break premiums at issue for his Fourth Cause of Action ($20.00/hour x 1 hour of premium pay x 1 day x 87,046 weekly pay periods = $1,740,920.00).

40.     Thus, Plaintiff's Third and Fourth Causes of Action put into controversy at least **$3,481,840.00.**

### 4.     *Plaintiff's Sixth Cause of Action for Waiting Time Penalties Places at Least $2,285,280.00 in Controversy.*

41.     In his Sixth Cause of Action, Plaintiff claims that Defendant throughout the statutory period maintained a systemic, company-wide policy and practice of willfully failing to pay Class Members all minimum wages, overtime wages, meal period premium wages and rest period premium wages due and owing upon separation of employment within the time specified by Labor Code §§ 201-203. Compl. at ¶¶ 4(e), 14, 19, 62-65. Plaintiff's claim for waiting time penalties is therefore derivative of his other unpaid wage and meal and rest period claims. Plaintiff further alleges that Defendant "continue[s] to fail to pay the terminated Class Members, without abatement, all wages required to be paid" and that they are therefore "entitled to recover . . . their additionally accruing wages for each day they were not paid, at their regular hourly rate of pay, up to 30 days" pursuant to Labor Code section 203. *Id.* at ¶¶ 63, 66.

4882-3559-0184 V2

42.     According to Plaintiff, Defendant throughout the statutory period maintained a systemic, company-wide policy and practice of failing to pay employees for all hours worked, including minimum wages and overtime wages. *Id.* at ¶ 4(a). In support of this claim, Plaintiff specifically alleges that he and putative Class members "were required to undergo a security check with their vehicles *at the beginning of each workday*, which also included a temperature check and waiting in line, *all off the clock and uncompensated.*" *Id.* at ¶ 15 (emphasis added). Plaintiff further claims that Defendant also underpaid Plaintiff and the putative Class members by failing to incorporate all remuneration when calculating the correct rate of overtime pay. *Id.* And, Plaintiff alleges that throughout the statutory period Defendant maintained a systemic, company-wide policy and practice of failing to provide employees with timely and duty-free meal periods and failing to authorize and permit employees to take timely and duty-free rest periods. *Id.* at ¶¶ 4(b)-(c), 15-17.

43.     Defendant denies that any waiting time penalties are owed to Plaintiff or any putative Class member. However, for purposes of this jurisdictional analysis *only*, Defendant relies on Plaintiff's allegations that such penalties are owed. Based on these allegations,it is reasonable to assume for purposes of establishing the requisite amount in controversy a 100% violation rate for waiting time penalties: that all putative Class members who separated employment with Defendant at any time between October 2, 2019 and May 10, 2022 (when Plaintiff filed his Complaint) allegedly have not been paid all wages due. Under analogous circumstances, the Ninth Circuit has noted it would not be unreasonable to assume that a class of terminated plaintiffs would be entitled to the maximum 30-day penalty. *See Jauregui,* 28 F.4th at 994; *see also McCollum,* 2022 WL 2663870, at *8 2022 WL 2663870, at *8 (where the defendant reasonably assumed one meal and one rest break violation per pay period, it was reasonable for the defendant to assume that all such pay periods resulted in the failure to pay wages owed on account of those alleged violations); *Lopez v. Bio-Reference*

*Lab'ys, Inc.,* 2022 WL 1744993, at *4 (E.D. Cal. May 31, 2022) ("The assumed frequency with which class members did unpaid work and were denied breaks therefore logically supports defendants' assumptions here."); *Crummie v. CertifiedSafety, Inc.,* 2017 WL 4544747, at *3 (N.D. Cal. Oct. 11, 2017) (where a plaintiff alleges "putative class members were owed (and are still owed)" wages, it is "completely reasonable to assume waiting time penalties accrued to the thirty-day limit"); *Marentes v. Key Energy Servs. Cal., Inc.,* 2015 WL 756516, at *9 (E.D. Cal. Feb. 23, 2015) (where final "wages [due] are alleged to have not been paid, the full thirty-days may be used for each of the putative class members"); *Ford v. CEC Entm't, Inc.,* 2014 WL 3377990 (N.D. Cal. 2014) ("Assuming a 100% violation rate is thus reasonably grounded in the complaint . . . [b]ecause no averment in the complaint supports an inference that these sums were ever paid."); *Crummie v. Certified Safety, Inc.,* 2017 WL 4544747, at *3 (N.D. Cal. Oct. 11, 2017) (where a plaintiff alleges "putative class members were owed (and are still owed)" wages, it is "completely reasonable to assume waiting time penalties accrued to the thirty-day limit"); *Marentes v. Key Energy Servs. Cal., Inc.,* 2015 WL 756516, at *9 (E.D. Cal. Feb. 23, 2015) (where final "wages [due] are alleged to have not been paid, the full thirty-days may be used for each of the putative class members"); *Ford v. CEC Entm't, Inc.,* 2014 WL 3377990 (N.D. Cal. 2014) ("Assuming a 100% violation rate is thus reasonably grounded in the complaint . . . [b]ecause no averment in the complaint supports an inference that these sums were ever paid.").

44.    Between October 2, 2019 and May 10, 2022, approximately 529 of Defendant's non-exempt employees in California separated from their employment with Defendant. Chacon Decl., ¶ 3.   The average hourly rate of pay for these employees during this time period is at least $18.00. Salters Decl., ¶ 8. Accordingly, although Defendant disputes liability, a conservative reasonable estimate of the amount in controversy for Labor Code § 203 penalties is **$2,285,280.00**, calculated as

4882-3559-0184 V2

follows (30 days (maximum statutory penalty under Cal. Lab. Code § 203) x 8 hours per day[4] x $18.00 average hourly rate x 529 former non-exempt employees = $2,285,280.00).

### 3.    *Plaintiff's Seventh Cause of Action for Wage Statement Penalties Places Approximately $2,051,150.00 in Controversy.*

45.    In his Seventh Cause of Action, Plaintiff alleges that Defendant throughout the statutory period maintained a systemic, company-wide policy and practice of failing to provide employees with accurate, itemized wage statements in violation of Labor Code §226(a). *Id.* at ¶¶ 4(g), 20, 68-75. Specifically, Plaintiff claims that the wage statements do not show all applicable hourly rates or all gross and net wages earned (including correct hours worked, correct wages earned for hours worked, correct overtime hours worked, correct wages for meal periods that were not provided, and correct wages for rest periods). *Id.* at ¶ 20. Plaintiff's wage statement claim is therefore derivative of his other claims for unpaid wages, including meal period and rest period premium wages.

46.    Plaintiff further alleges that the wage statements do not show Defendant's address as required by California law, and that he and the putative Class members suffered injury as a result of Defendant's alleged violations of Labor Code § 226(a). *Id.*

47.    Among other relief, Plaintiff seeks statutory penalties for these alleged violations pursuant to Labor Code § 226(e). *Id.* at ¶ 20; *see also* Compl. at Prayer for Relief, ¶ 36.Labor Code § 226(e) states that an employee suffering injury as a result of a knowing and intentional failure by an employer to comply with Labor Code § 226(a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per

---

[4]    This is a conservative estimate given Plaintiff's allegation that "[a]t all times relevant hereto, Plaintiff and the Class have worked more than eight hours in a workday," and that they are "regularly required to work overtime hours." Compl. at ¶¶ 43, 44; *see also* Chacon Decl., ¶ 4.

employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of $4,000. Labor Code § 226(e).

48.     Defendant denies that any wage statement penalties are owed to Plaintiff or any putative Class member. However, for purposes of this jurisdictional analysis *only*, Defendant relies on Plaintiff's allegations that these penalties are owed. Based on these allegations, it is reasonable to assume for purposes of this removal that all putative Class members received inaccurate wage statements each pay period. *See Mejia v. DHL Express (USA), Inc.,* 2015 WL 2452755, at *5 (C.D. Cal. May 21, 2015) (concluding it is appropriate to use 100% violation rate for wage statement claim where the claim is derivative).

49.     In the one-year period prior to the filing of Plaintiff's Complaint through the present, Defendant provided at least 41,023 wage statements to putative Class members. Salters Decl., ¶9. Even assuming the lesser $50.00 penalty is applied, the amount in controversy for penalties related to Plaintiff's inaccurate wage statement claim can reasonably be estimated at **$2,051,150.00**, calculated as follows ($50 penalty per allegedly non-compliant wage statement[5] x at least 41,023 at-issue wage statements during the relevant one-year statute of limitations period = $2,051,150.00).

### 4.     *Plaintiff's Claim for Attorneys' Fees Puts the Amount in Controversy Well Over $5 Million.*

50.     Plaintiff's First, Second, Third, Fourth, Sixth and Seventh Causes of Action place at least **$8,630,861.83** into controversy, and therefore alone satisfy the amount-in-controversy requirement, exclusive of Plaintiff's attorneys' fees.

51.     Plaintiff also seeks to recover an unspecified amount of attorneys' fees, costs of suit, and interest to the extent permitted by law, including pursuant to the Labor Code. Compl. at ¶¶ 39, 47, 60, 67, 75, 94; *see also* Prayer for Relief at ¶ 8, 13,

---

[5] The estimate of the amount in controversy for Plaintiff's wage statement penalties claim is higher when using a $100 penalty per employee for each wage statement issued after the initial wage statement was issued to the employee during the relevant time period.

18, 23, 28, 33, 38, 43. These fees are properly included when determining the amount in controversy. *Galt G/S v. JSS Scandinavia,* 142 F.3d 1150, 1155 (9th Cir. 1998) ("[w]e hold that where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."). According to the Ninth Circuit, "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount in controversy requirement is met." *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018).

52.     In the class action context, courts have found that 25 percent of the aggregate amount in controversy is a benchmark for attorneys' fees award under the "percentage of fund" calculation and courts may depart from this benchmark when warranted. *See Staton v. Boeing Co.,* 327 F.3d 938, 968 (9th Cir. 2003) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."). While Defendant acknowledges that the 25% benchmark does not automatically apply in all cases, the benchmark need only be adjusted "when special circumstances indicate that the percentage of recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Cortez v. United Natural Foods, Inc.,* 2019 WL 955001, *7 (N.D. Cal. Feb. 27, 2019) (internal quotations omitted). Courts within the Ninth Circuit commonly apply a 25% benchmark rate to California wage and hour class actions to determine the amount of attorneys' fees in controversy for jurisdictional purposes. *Id.* at *7-8 ("In the Court's experience, this appears to be a typical wage and hour class action to which courts in this Circuit would likely apply the 25% benchmark rate."); *Anderson v. Starbucks Corp.,* No. 3:20-CV-01178-JD, 2020 WL 7779015, at *4 (N.D. Cal. Dec. 31, 2020);*Ramirez v. Benihana Nat'l Corp.,* 2019 WL 131843, at *2 (N.D. Cal. Jan. 8, 2019);*Ramos v. Schenker, Inc.,* 2018 WL 5779978, at *3 (C.D. Cal. Nov. 1, 2018) ("'[W]hen including attorneys' fees within the amount-in-controversy for jurisdictional purposes,

courts in this circuit consistently use the 25% benchmark rate,' especially in wage and hour class actions like this one where fee awards at settlement typically require court approval.'" (quoting *Garcia v. Lifetime Brands, Inc.,* 2016 WL 81473, at *4 (C.D. Cal. Jan. 7, 2016)).

53.    Although Defendant denies Plaintiff's claim for attorneys' fees, inclusion of "reasonable" attorneys' fees for purposes of removal adds another **$2,157,715.46** in controversy.

54.    While Defendant denies Plaintiff's allegations and theories of recovery, denies that Plaintiff or any putative Class member is entitled to any of the relief for which Plaintiff has prayed, and expressly reserves all of its defenses, based on Plaintiff's allegations, the amount in controversy is at least **$10,788,577.30**, calculated as follows:

| Claim | Amount |
|---|---|
| Failure to Pay Minimum Wages | $377,274.78 |
| Failure to Pay Overtime Wages | $435,317.05 |
| Failure to Provide Meal Periods | $1,740,920.00 |
| Failure to Authorize and Permit Rest Breaks | $1,740,920.00 |
| Waiting Time Penalties | $2,285,280.00 |
| Wage Statement Penalties | $2,051,150.00 |
| Attorneys' Fees (25% of recovery based on amount in controversy on above claims) | $2,157,715.46 |
| **Total Amount in Controversy** | **$10,788,577.30** |

55.    The amount in controversy figures set forth above are underinclusive of the actual amount placed in controversy by Plaintiff's claims because they are based on conservative assumptions, including: (a) excluding alleged recovery sought for Plaintiff's Fifth Cause of Action for failure to indemnify necessary business expenses and Eighth Cause of Action for violation of Unfair Competition Law, and (b)

4882-3559-0184 V2

truncating the statutory period to October 2, 2019 through the present due to the Munoz class action settlement, even though Plaintiff (who participated in this settlement) proposes a class period dating back to May 10, 2018.

56.    Accordingly, this Court has original jurisdiction of this action pursuant to 28 U.S.C. section 1332(d)(2). This action is therefore a proper one for removal to this Court pursuant to 28 U.S.C. section 1441(a).

## III.    THE OTHER REMOVAL PREREQUISITES HAVE BEEN SATISFIED.

57.    Venue lies in the Central District of California pursuant to 28 U.S.C. sections 1441, 1446(a), and 84(c). This action was originally brought in the Superior Court of the State of California, County of Ventura, which is located within the jurisdiction of the United States District Court for the Central District of California, Western Division. Therefore, this is the appropriate Court for removal.

58.    Pursuant to 28 U.S.C. section 1446(d), a copy of this Notice of Removal will be filed with the clerk of the Superior Court for the County of Ventura, and Defendant is concurrently serving this Notice of Removal on Plaintiff through his counsel of record.

59.    If any question arises as to the propriety of the removal of this action, Defendant respectfully requests the opportunity to present a brief and oral argument in support of its position that the case is removable.

///
///
///
///
///
///
///

23    CASE NO. 2:22-cv-4847
NOTICE OF REMOVAL

1   WHEREFORE, Defendant respectfully requests that this action be removed

2   from the Superior Court of the State of California and for the County of Ventura to the

3   United States District Court for the Central District of California, and that all future

4   proceedings in this matter take place in the United States District Court for the Central

5   District of California.

6

7   Dated:      July 14, 2022              WILSON TURNER KOSMO LLP

8                                  By:   */s/ Marissa L. Lyftogt*

9                                         MARISSA L. LYFTOGT
                                          SUSAN I. HENDERSON
10                                        Attorneys for Defendant
                                          PENTAIR WATER POOL AND
11                                        SPA, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL

4882-3559-0184 V2

**INDEX OF EXHIBITS**

| Exhibit No. | Description |
|---|---|
| 1. | Summons and Complaint and other documents, pleadings and orders required to be served by the court |
| 2. | Answer filed by Defendant |

NOTICE OF REMOVAL

4882-3559-0184 V2